UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

CLARENCE L. THOMPKINS,

      Plaintiff,

v.

PNC BANK d/b/a PNC FINANCIAL
SERVICES,

      Defendant.

10-cv-163
**ELECTRONICALLY FILED**

## <u>**MEMORANDUM OPINION**</u>

Before the Court is Defendant's Motion for Summary Judgment filed pursuant to Fed. R. Civ. P. 56 (doc. no. 35). Plaintiff, Clarence Thompkins, claimed Defendant, PNC Bank d/b/a PNC Financial Services, harassed and discriminated against him because of his race, gender, and age, and then retaliated against him when he opposed said treatment. Plaintiff sued Defendant under Title VII of the Civil Rights Act of 1991, 42 U.S.C. §§ 2000(e) *et seq*., the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*., and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa.C.S.A. § 951 *et seq*. See Complaint at doc. no. 1-1.

Plaintiff's Complaint alleged Defendant subjected him to disparate treatment, harassment, humiliation, discrimination, and a hostile work environment based on his age, sex/gender, and/or race. Doc. no. 1-1. Plaintiff's Complaint outlined several discrete events which he claims exemplify this negative treatment. *Id.* After Defendant answered Plaintiff's Complaint, the parties engaged in discovery.

Defendant now moves this Court to enter judgment in its favor on the following bases: (1) the alleged discriminatory acts occurring in 2006 and 2007 fall outside the applicable statute of

1

limitations and are thus time-barred; (2) plaintiff failed to exhaust his administrative remedies with respect to the alleged discriminatory acts occurring in 2009 and 2010, and thus, these are now barred; (3) there are no issues of material fact for a fact finder to consider with respect Plaintiff's remaining claims.

Plaintiff responds (see doc. no. 42) by asserting that his claims are not subject to 300-day statute of limitations because they are cumulative in nature and cannot be categorized as "discrete acts." Plaintiff argues that all his claims were timely filed and all actions taken by Defendant fall within the scope of the original claim.

After carefully considering the submissions of both parties, this Court will grant Defendant's Motion for Summary Judgment for the reasons that follow.

## I. BACKGROUND

Defendant hired Plaintiff on May 1, 2006, for the position of "recovery specialist." Doc. no. 1-1, ¶ 5, Doc. no. 37 ¶ 1. Plaintiff was 54 years old when he was hired by Defendant. Doc. no. 1-1, ¶ 6, and doc. no. 37, ¶ 1. Generally, Plaintiff's job duties required him to recover loans or other indebtedness due to Defendant or its third-party customers, including Capital One. Doc. no. 1-1, ¶ 5. Plaintiff was paid on an hourly and a commission basis. Doc. no. 1-1, ¶ 6.

In July of 2006, Darlene Davis, a caucasian female was promoted to a Team Manager position and was responsible for managing a team of recovery specialists, including Plaintiff. Doc. no. 37, ¶ 3, doc. no. 43, ¶ 3. In June of 2007, Capital One terminated its contract with PNC. Doc. no. 37, ¶ 6, doc. no. 43, ¶ 6. Plaintiff, along with a few additional PNC employees, continued to work on remaining unsecured Capital One accounts and PNC unsecured accounts. Id.

In September of 2007, PNC adjusted Plaintiff's goal to an amount three times what it had

been in the previous quarter. Doc. no. 37, ¶ 8; doc. no. 43, ¶ 8. Plaintiff met this higher goal. Doc. no. 37, ¶ 9; doc. no. 43, ¶ 9. In 2008, PNC adjusted Plaintiff's goal downward. Id. Plaintiff earned incentives through the end of October 2008. Doc. no. 37, ¶ 10; doc. no. 43, ¶ 10.

Between January 2007 and December of 2008, Plaintiff applied for a number of job openings within PNC. Doc. no. 37, ¶ 11; doc. no. 43, ¶ 11. Only one of the positions he applied for involved collections or recovery work. Id. Plaintiff applied for a position within the Consumer Loan Center as a "collection/recovery team manger." Doc. no. 37, ¶ 13. Defendant did not hire Plaintiff for any of the positions to which he applied. Doc. no. 37, ¶ 12; doc. no. 43, ¶ 12. Defendant hired another African-American male, over the age of 40, for the "collection/recovery team manger" position. Doc. no. 37, ¶ 14; doc. no. 43, ¶ 6.

On December 19, 2008, Plaintiff dually filed a charge with Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Rights Commission ("PHRC") alleging discrimination based on race, sex, and age and also claimed retaliation. Doc. no. 37, ¶ 22; doc. no. 43, ¶ 22. The EEOC issued a Right to Sue letter on August 31, 2009. Doc. no. 37, ¶ 25; doc. no. 43, ¶ 25.

On February 2, 2010, Defendant issued a written warning to Plaintiff for inappropriate and unprofessional interactions with customers during telephone calls. Doc. no. 37, ¶ 35; doc. no. 43, ¶ 35. Defendant has a policy of not paying incentives to employees who are "on corrective action" and thus, did not pay Plaintiff any incentives for February and March of 2010 due to the written warning. Doc. no. 37, ¶ 36; doc. no. 43, ¶ 36.

Plaintiff contends that Defendant harassed and/or retaliated against him by monitoring his telephone calls with customers. Doc. no. 37, ¶ 34; doc. no. 43, ¶ 34. Plaintiff admitted that he

agreed, in writing, to Defendant's "Consumer Lending Telephone Monitoring" policy under which Defendant was permitted to randomly monitor calls to determine if the calls were being conducted in a proper manner. Id.

Plaintiff essentially admitted during his deposition that no one at PNC discriminated against him because of his sex/gender and abandoned his discrimination claims based on sex/gender. Doc. no. 37, ¶ 27; see also, doc no. 43-6, pp. 126:1-10, 127:1-7. Plaintiff also admitted during his deposition that he was only speculating that his race and/or age played a role in Defendant's decisions with respect to his employment. Doc. no. 37, ¶ 31; doc. no. 43, ¶ 31.

Plaintiff does allege that Defendant gave preferential treatment to Brenda Mullholland-Duran and Ken Hafner by allowing them to work on secured real estate accounts in the Fall of 2009 and Spring of 2010. (Doc. no. 37, ¶ 37). Plaintiff also claimed during his deposition that Defendant was unfair to him when Lori Pegher was assigned to work secured accounts. (Doc. no. 37, ¶ 37). Plaintiff did not know any of their qualifications or work history, nor the criteria Defendant used to make these assignments. (Doc. no. 37, ¶ 37).

In addition, Plaintiff has asserted that in retaliation for his filing the EEOC charge, his supervisor, Team Manager Darlene Davis, rejected his proposals to settle some of his accounts for 20% to 25% of their outstanding debt. Doc. no. 37, ¶ 32; doc. no. 43, ¶ 32. During his deposition, Plaintiff admitted that Defendant has a policy which provides that accounts may not be settled for less than 35% without first obtaining Manager approval, and even then, they must be supported by documentation supporting the reason for settlement. Doc. no. 37, ¶ 33; doc. no. 43, ¶ 33.

## II. STANDARD OF REVIEW

Summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)(2).

When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party. Fed. R. Civ. P. 56(e)(2).

To demonstrate entitlement to summary judgment, defendant, as the moving party, is not required to refute the essential elements of the plaintiff's cause of action. Defendant needs only point out the absence or insufficiency of plaintiff's evidence offered in support of those essential elements. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Once that burden has been met, plaintiff must identify affirmative evidence of record that supports each essential element of his cause of action. If plaintiff fails to provide such evidence, then he is not entitled to a trial, and defendants are entitled to summary judgment as a matter of law. *Id.*

While summary judgment is typically disfavored in employment discrimination cases, it is appropriate when a plaintiff relies on mere inferences, conjecture, speculation or suspicions. See Anderson v. School District of Philadelphia, 1998 U.S. Dist. LEXIS 4232, 1998 WL 151034, *5 (E.D. Pa. 1998). Similarly, summary judgment may not be granted if there is a disagreement over

what inferences can be reasonably drawn from the facts, even if the facts are undisputed. <u>Ideal Dairy Farms, Inc. v. John Labatt. Ltd.</u>, 90 F.3d 737, 744 (3d Cir. 1996), citing <u>Nathanson v. Medical College of Pennsylvania</u>, 926 F.2d 1368, 1381 (3d Cir. 1991). Moreover, "any unexplained gaps in materials submitted by the moving party, if pertinent to material issues of fact, justify denial of a motion for summary judgment." <u>Ideal Dairy Farms</u>, 90 F.3d at 744, quoting <u>Ingersoll-Rand Financial Corp. v. Anderson,</u> 921 F.2d 497. 502 (3d Cir. 1990)(quoting O'Donnell v. United States, 891 F.2d 1079, 1082 (3d Cir.1989)).

Finally, we do not distinguish between the claims under federal and Pennsylvania law in our disposition of this case as the standards are the same for purposes of determining the summary judgment motion. See <u>Kelly v. Drexel Univ.</u>, 94 F.3d 102, 105 (3d Cir.1996).

In summary, the inquiry under a Rule 56 motion is whether the evidence of record presents a genuine dispute over material facts so as to require submission of the matter to a jury for resolution of that factual dispute or whether the evidence is so one-sided that the movant must prevail as a matter of law. It is on this standard that the court has reviewed Defendant's motion and Plaintiff's response thereto.

## III. DISCUSSION

Because Plaintiff admitted during his deposition that no one at PNC discriminated against him because of his sex/gender, the Court will grant summary judgment to Defendant with respect to these claims, and will focus the remainder of this Opinion on Plaintiff's age, race, retaliation and hostile work environment claims.

### A.  Acts Occurring in 2006 and 2007 are Time-Barred

The filing of a charge with the EEOC and receipt of a notice of the right to sue are

prerequisites to a civil action under Title VII. <u>Hicks v. Abt Assocs.</u>, 572 F.2d 960, 963 (3d Cir. 1978). In order to proceed under Title VII in Pennsylvania, an employee has 300 days from the date of the occurrence of the discriminatory employment practice in which to file a charge with the EEOC. 42 U.S.C. § 2000e-5(e) (1988); accord, <u>Watson v. Eastman Kodak Co.</u>, 235 F.3d 851 (3d Cir. 2000)(holding that a charge of discrimination must be filed with the EEOC or PHRC within 300 days of the alleged discriminatory action).

This time period for filing a charge is subject to equitable doctrines such as tolling or estoppel. <u>National R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 113 (2002). Courts may evaluate whether it would be proper to apply such doctrines, although they are to be applied sparingly. <u>Id</u>. at 113-114, citing <u>Baldwin County Welcome Center v. Brown</u>, 466 U.S. 147, 152, (1984) (per curiam) ("Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants").

The continuing violations doctrine is a similar concept. <u>Yeager v. UPMC Horizon</u>, 698 F.Supp.2d 523, 540 (W.D.Pa. 2010). The continuing-violations doctrine applies where "a defendant's conduct is part of a continuing practice." <u>Brenner v. Local 514, United Brotherhood of Carpenters & Joiners of Am.</u>, 927 F.2d 1283, 1295 (3d Cir.1991). Where an otherwise untimely action is based upon a continuing practice, a court will make an exception "so long as the last act evidencing the continuing practice falls within the limitations period." <u>Id</u>. A series of discrete and identifiable actions does not in and of itself constitute a continuing violation. <u>Van Cleve v. Nordstrom, Inc.</u>, 64 F.Supp.2d 459 (E.D.Pa. 1999). The continuing violation theory was developed "[t]o accommodate . . . more indeterminate situations," as opposed to "more inflexible" cases in which "there is a discrete trigger event." <u>West v. Philadelphia Elec. Co.</u>, 45 F.3d 744, 754 (3d Cir.

1995). The doctrine is a narrow exception to the filing requirement, and courts must focus on the "affirmative acts of the defendants." Cowell v. Palmer Twp., 263 F.3d 286, 293 (3d Cir. 2001).

In Cowell, the United States Court of Appeals for the Third Circuit identified three factors that trial courts should consider when deciding whether the continuing violations doctrine applies: (1) subject matter, (2) frequency, and (3) the degree of permanence. Id. at 294-295. In MFS, Inc. v. Township of South Annville, No. 1:05-cv-1371, 2006 WL 3254535, *3 (M.D.Pa. Nov 9, 2006), Judge Kane further expounded on the Cowell requirements as follows:

> When determining whether to apply the doctrine, the Third Circuit has identified three factors that courts should consider:
>
> (1) *subject matter*-whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2) *frequency*-whether the acts are recurring or more in the nature of isolated incidents; and (3) *degree of permanence*-whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate.

> [Cowell, 263 F.3d] at 292 (internal citations omitted) (emphasis added). The Third Circuit has further instructed that "[t]he consideration of 'degree of permanence' is the most important of the factors." Id.

In Rush v. Scott Specialty Gases, Inc., 113 F.3d 476, 483-484 (3d Cir.1997), the Court of Appeals held that the plaintiff's hostile environment/sexual harassment claim constituted a continuing violation; but, in contrast, the Court of Appeals also held that plaintiff's failure to promote and failure to train claims were not the type of claims that could be viewed as part of a continuing violation. Rather, the Court of Appeals deemed these claims to be "discrete instances of discrimination . . . not susceptible to a continuing violation analysis." Id.

There is no dispute that on December 19, 2008, Plaintiff dually filed a charge with the EEOC

and the PHRC. Therefore, per the statute, only those claims which occurred within 300 days prior to the filing (*i.e.* those that occurred after February 23, 2008) are actionable. Defendants seek summary judgment on all discrimination and harassment claims arising from incidents which took place before February 23, 2008.

Defendant argues that several "discrete acts" of which Plaintiff complains occurred before February 23, 2008 and are thus time-barred. Those acts include: (1) being denied incentive payments for several months in 2006; (2) Darlene Davis being promoted to Team Manager in July of 2006; (3) the tripling of his goals in last quarter of 2007; (4) being forced to give up a part-time position with an outside debt recovery company in 2006; (5) being denied promotions for which he applied in January of 2007; and (6) being forced to work two jobs starting in August of 2006.

Plaintiff argues that the application of the continuing violations doctrine applies in this case, suggesting this Court consider these untimely actions to be part of a continuing practice, thereby entitling plaintiff to an exception to the 300-day statute of limitations. However, Plaintiff's brief fails to explain how each of these six claims satisfy the subject matter, frequency, and the degree of permanence requirements established in Cowell.

First, Plaintiff's failure to promote claims clearly constitute discrete events. See National Railroad, 536 U.S. at 110 (A discrete discriminatory act, such as termination, failure to promote, denial of transfer, refusal to hire and so forth, constitutes a separate actionable "unlawful employment practice" and a charge challenging any such practice must be filed with the EEOC within one hundred eighty or three hundred days after the particular unlawful practice has occurred.)

Second, Plaintiff offers no evidence that he was required to give up his outside collection employment based on Defendant's discriminatory practices. Rather, he states that Defendant's ethics

department approved his outside work, but his own department forced him to quit the other job. However, Plaintiff provides no independent evidence of such approval from the ethics department nor does he explain whether his own department's policy prohibiting "moonlighting" in the same field (collections) is usurped by an opinion from Defendant's ethics department.

Third, each of the acts of alleged discrimination (*i.e.* being denied incentive payments for several months in 2006; the tripling of his goals in last quarter of 2007; and being forced to work two jobs starting in August of 2006) more closely resemble isolated employment decisions. Like a failure to promote claim, in each of these three situations, a person generally knows when he has been denied incentive payments to which he believes himself entitled, or when he believes his goals have been wrongfully increased, or when he is being forced to work two jobs.

Because each of the aforementioned six acts of which Plaintiff complains falls outside of the 300-day statute, and because Plaintiff has offered no convincing argument suggesting that tolling under a continuing violation theory is appropriate here – nor has the Court found any evidence to support such an argument – the Court will grant Defendant's Motion for Summary Judgment with respect to the six acts which pre-date February 23, 2008 as time-barred.

**B. Failure to Exhaust Administrative Remedies**

Defendant claims Plaintiff failed to exhaust his administrative remedies with respect to the alleged discriminatory acts occurring in 2009 and 2010, and thus, these are now barred. Plaintiff counters by again arguing that the acts of which he complains are not discrete acts but instead, contends they were cumulative in nature. He argues that because of the on-going and continual nature of these acts he was not bound to follow the protocols related to exhausting his administrative remedies.

### 1. Plaintiff's Title VII Claims

A plaintiff must exhaust the administrative remedies available under Title VII before bringing a Title VII suit in federal court. See 42 U.S.C. §§ 2000e-5 (b), (f) (2000); Alexander v. Gardner-Denver Co., 415 U.S. 36, 47, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974); Antol v. Perry, 82 F.3d 1291, 1295-96 (3d Cir.1996). A plaintiff must exhaust those remedies by putting the EEOC on notice of each discriminatory act, and then by going through the EEOC process before bringing suit based on that act. National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 113, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002); McCann v. Astrue, 293 Fed.Appx. 848, 850 (3d Cir.2008) (emphasis added).

Only if the separate acts "are not individually actionable, but when aggregated may make out a hostile work environment claim" can they be aggregated under the continuing violation doctrine and all made part of a single claim. McCann v. Astrue, 293 Fed.Appx. 848, 850 (3d Cir.2008). Because the exhaustion requirement is a non-jurisdictional prerequisite, a plaintiff may attempt to employ the continuing violation doctrine to permit him or her to aggregate the acts allow recovery on that basis. Id. The continuing violation doctrine, however, only applies when the alleged discriminatory acts are not individually actionable, but when aggregated may make out a hostile work environment claim. Id. The law makes clear that discrete discriminatory acts that are actionable on their own may not be aggregated under a continuing violation theory. Id. (footnote omitted), citing National R.R. Passenger Corp., 536 U.S. at 113, ("[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discriminatory act starts a new clock for filing charges alleging that act.").

The Supreme Court has made clear that an instance of failure to promote is a discrete act that is individually actionable. O'Connor v. City of Newark, 440 F.3d 125, 127 (3d Cir.2006) (citing

National R.R. Passenger Corp., 536 U.S. at 114).

In Garland v. US Airways Inc., the United States Court of Appeals for the Third Circuit held:

> Title VII claimant (and claimants under the Pennsylvania Human Relations Act) must exhaust administrative remedies prior to seeking relief in federal court. "A complaint does not state a claim upon which relief may be granted unless it asserts the satisfaction of the precondition to the suit specified by Title VII: prior submission of the claim to the EEOC for conciliation or resolution." Robinson v. Dalton, 107 F.3d 1018, 1022 (3d Cir.1997) (internal quotations omitted).

Garland, 270 Fed.Appx. 99, 103, (3d Cir. 2008).

More recently in Mikula v. Allegheny County Of Pennsylvania, 583 F.3d 181 (3d Cir. 2009) the Court of Appeals held:

> [D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the 180- or 300-day time period after the discrete discriminatory act occurred. The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed.

583 F.3d at 185-186 (citation omitted).

Thus, in the instant matter, with respect to Plaintiff's Title VII claims, Plaintiff had to place the EEOC on notice of each discriminatory act, and then go through the EEOC process with respect to each act, for every act that was discrete.

In Riley v. Delware River and Bay Authority, 457 F.Supp.2d 505 (D.Del. 2006) relying on National Railroad defined a "discrete act" as a "single act or occurrence."  457 F.Supp.2d at 511, (citation omitted).  The District Court in Riley also stated:

> [I]n the context of discrete acts, the term "unlawful employment practice" under Title VII does not mean a string of related events. . . . Furthermore, the

[National Railroad] Court reasoned that discrete acts within the statutory period do not make timely a discrimination charge regarding acts that fall outside the statutory period. Each discrete act starts a new statute of limitations clock.

Id. at 510-511 (footnote and citations omitted).

Plaintiff alleges a number of harms upon which he seems to base his Title VII claims, including: (1) discriminatory refusal to allow Plaintiff to simultaneously work for another collections company; (2) tripling Plaintiff's incentive goal; (3) discriminatory refusal to pay plaintiff to "work two jobs;" and (4) discriminatory refusal to interview for and/or promote plaintiff to a higher-paying job. As noted in subpart "A." above, this Court finds these acts to be discrete events – many of which are barred by the statute of limitations. Any to any of those not time-barred, by Plaintiff's own admission, Plaintiff did not exhaust his administrative remedies believing these discrete events were cumulative in nature.

Defendant further points to other alleged acts that Plaintiff claims give rise to his Title VII claim: (1) discriminatory denial of the opportunity to work on secured loans like Brenda Mullholland-Duran, Ken Hafner and Lori Pegher; (2) retaliatory and discriminatory rejection of Plaintiff's proposed settlements of certain accounts at 25% their value; (3) retaliatory issuance of a written warning (i.e. a "corrective action") to Plaintiff for inappropriate and unprofessional interactions with customers in 2010; (4) retaliatory and discriminatory denial of February and March 2010 incentive payments based on the "corrective action;" (5) retaliatory and discriminatory monitoring of Plaintiff's telephone calls with customers; and (6) retaliatory and discriminatory threats of "corrective action" for violating company vacation policies.

These discriminatory acts cannot be aggregated because they are individually actionable. Thus, the continuing violation doctrine would, likewise, not apply to these acts.

Because it is undisputed that Plaintiff did not amend his EEOC Charge nor did he file any additional charges to include some or all of the acts described above, it is clear that he has failed to exhaust his administrative remedies with respect to these claims. Accordingly, Defendant's Motion for Summary Judgment will be granted with respect to these Title VII claims.

### 2. Plaintiff's ADEA Claims

Similarly, with respect to ADEA claims, the Court of Appeals in <u>Shahin v. Delaware Dept. Of Finance</u> held:

> A complaint brought under the Age Discrimination in Employment Act ("ADEA") "will be dismissed for failure to exhaust administrative remedies if a supporting EEOC charge was not filed within 180 or 300 days (depending on state law) of notification to the employee of the adverse employment action." <u>Ruehl v. Viacom, Inc.</u>, 500 F.3d 375, 382 (3d Cir.2007); 29 U.S.C. § 626(d). This requirement is a "non-jurisdictional prerequisite." <u>Ruehl</u>, 500 F.3d at 384.

<u>Shahin</u>, 344 Fed.Appx. 765, 766 (3d Cir. 2009).

Here, Plaintiff contends that he was treated in disparate manner based on Defendant's assignments of loans to younger Caucasian co-workers. Again, this is a discrete, individually actionable action, which cannot be aggregated and thus, the continuing violation doctrine will not apply.

Therefore, because Plaintiff did not amend his EEOC Charge to include this act nor did he file an additional charge, he has failed to exhaust his administrative remedies with respect to this ADEA claim. Accordingly, Defendant's Motion for Summary Judgment will be granted with respect to this ADEA claim.

### C. No Issues of Material Fact with Respect to Remaining Claims

Defendant next argues that there are no issues of material fact for a fact-finder to consider with respect Plaintiff's remaining claims.

## 1. Failure to Promote Claims

Defendant claims that Plaintiff failed to establish a *prima facie* case for his "failure to promote" claim. When analyzing an alleged failure to promote claim, this Court applies the familiar framework set out in McDonnell Douglas v. Green, 411 U.S. 792, 802 (1973). See, Vulcan Pioneers of New Jersey v. City of Newark, 374 Fed.Appx. 313, 318 (3d Cir. 2010).

As the Court of Appeals in Vulcan Pioneers stated:

> The plaintiff carries the initial burden of establishing a prima facie case, and although "the prima facie elements of a discrimination claim vary depending on the particular facts of the case," Storey v. Burns Int'l Sec. Servs., 390 F.3d 760, 764 (3d Cir.2004), the plaintiff's task generally is to "raise[ ] an inference of discrimination," Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). That requires showing (1) that she belongs to a protected class, (2) that she was qualified for the position at issue, (3) that she was subject to an adverse employment action, and (4) that the employer continued to seek out similarly qualified individuals to fill the position at issue under circumstances suggestive of discrimination. Sarullo v. U.S. Postal Serv., 352 F.3d 789, 797 (3d Cir.2003).

374 Fed.Appx. at 318.

Applied here, Plaintiff needs to raise an inference of discrimination with respect to his failure to promote claim and this means that he needs to show that: (1) he belonged to a protected class; (2) he was qualified for the position at issue; (3) he was subject to the an adverse employment action; and (4) the employer continued to seek out similarly qualified individuals to fill the position at issue under circumstances suggestive of discrimination. Defendant claims that there is no evidence that tends to show that Plaintiff can meet the second, third, or fourth prong of this four-part test.

The parties agree that Plaintiff was hired by Defendant in May of 2006, and that he applied for many jobs between January 2007 and December of 2008. The parties also agree that only one of the jobs for which Plaintiff applied involved any sort of recovery or collection work.

Under the second prong of the four-part test, it is Plaintiff's burden to show – with evidence –

that he possessed the necessary qualifications for the jobs for which he applied. With respect to the non-recovery/non-collection jobs Plaintiff has submitted his resume to this Court for consideration. Plaintiff contends that his resume shows he was qualified for not only the collection positions to which he applied, but also for the numerous other positions. This "evidence" does not satisfy the second prong of the test.

Further, the third and fourth prongs are not met. As to prong three, Plaintiff contends he suffered adversely due to Defendant's refusal to hire him for the positions – presuming these positions paid more than what he was making. However, Plaintiff proffered no evidence as to the pay scale for any of the jobs he applied for and was not given.

Moreover, as to prong four, Plaintiff admits he does not know the qualifications of the other individuals selected for promotions he was denied. He does admit that when he questioned Defendant about his not being given interviews for the positions to which he applied, Defendant told him those that interviewed were more qualified than him. Doc no. 42, p. 10. It is also undisputed that an African American male over the age of 40 was given the collection recovery job that Plaintiff applied for and did not obtain.

In short, Plaintiff has failed to present any evidence tending to prove that he was the subject of an adverse employment action and that Defendant continued to seek out similarly qualified individuals to fill the position at issue under circumstances suggestive of discrimination (i.e. prongs three and four of the test). For these reasons, summary judgment will granted in favor of Plaintiff's failure to promote claim.

## 2. Discriminatory Pay Claims

Although it is somewhat unclear to this Court whether Plaintiff is asserting a discriminatory pay claim, construing all facts in favor of Plaintiff as the non-moving party, the Court will assume one has been adequately pled here.

To establish a *prima facie* case for unequal compensation based on race, the plaintiff must demonstrate that: (1) he is a member of a protected class; (2) he is qualified for the job; and (3) he was paid at a lower rate than similarly situated employees. See, Jackson v. Bob Evans – Columbus, No. 2:04 cv 559, 2006 WL 3814099 (W.D.Pa. December 22, 2006) citingIso, Harden v. Southwark Metal Mfg. Co., No. Civ.A. 99-4666, 2002 WL 31194220, *7 (E.D.Pa. Oct. 2, 2002) (citing Cooper v. Southwark Metal Co., Civ. A. No. 91-6961, 1992 WL 236285, * 1 (E.D.Pa. Sept. 11, 1992)).

As noted above, with respect to any of the jobs for which Plaintiff applied but did not obtain, the only evidence that Plaintiff was qualified for most of the positions is his own testimony and his resume. With respect to his current position, Plaintiff offers no evidence tending to prove that he was paid at a lower rate than similarly situated employees. Plaintiff offers no comparator evidence – only his own speculation – that he was paid at a lower rate than his co-workers. Accordingly, judgment will be entered again Plaintiff with respect to his unequal compensation claim.

## 3. Discrimination and Disparate Treatment

Like Plaintiff's failure to promote claim, Plaintiff's discrimination and disparate treatment claims are subject to the McDonnell Douglas analysis. As expounded upon by the Court of Appeals for the Third Circuit:

> To establish employment discrimination, it must be shown that the employer bore a racially discriminatory animus against the employee, and that this animus manifested itself in some challenged action, whether it be dismissal, failure to promote, or failure to hire. See, e.g., International Brotherhood of Teamsters v.

United States, 431 U.S. 324, 334-35, 97 S.Ct. 1843, 1854, 52 L.Ed.2d 396 (1977) ("ultimate factual issues are ... simply whether there was a pattern or practice of ... disparate treatment and, if so, whether the differences were racially premised"); General Electric Co. v. Gilbert, 429 U.S. 125, 137 n. 14, 97 S.Ct. 401, 409 n. 14, 50 L.Ed.2d 343 (1976) (Plaintiffs "who seek to establish discrimination have the traditional civil litigation burden of establishing that the acts they complain of constituted discrimination in violation of Title VII"); Massarsky v. General Motors Corp., 706 F.2d 111, 117 (3d Cir.1983) ( "plaintiff alleging disparate treatment ... bears the ultimate burden of persuading [the trier of fact] that his treatment was caused by purposeful or intentional discrimination").

Lewis v. University of Pittsburgh, 725 F.2d 910, 914 (3d Cir. 1983).

Here, Plaintiff claims that his supervisor discriminated against him by rejecting certain settlements that he proposed.  However, Plaintiff admitted that Defendant had a policy which applied to all employees – not just him – requiring supervisor approval for any proposed settlements for less than 35% of the outstanding debt.  Defendant admits that his proposed settlements were for 20-25% of the outstanding debt and that he needed supervisor approval for them.   Neither the application of this supervisor-approval policy, nor the supervisor's rejection of the proposed settlements "manifested itself" as a dismissal, a failure to promote, or failure to hire Plaintiff as required by Lewis.  Thus, this claim fails.

Next, Plaintiff asserts that Defendant discriminated against him by issuing him a written warning (i.e. a "corrective action") in 2010 for violating telephone etiquette policies.  Again, the issuance of a written warning fail to constitute an "adverse employment action" as described in Lewis.  Therefore, this claim will likewise fail.

Plaintiff also contends that the failure to pay him incentive payments for February and March constitutes discrimination.  However, Plaintiff admits that he received a corrective action in early 2010, and that Defendant had a policy under which any employee on corrective action would not receive such payments.  Plaintiff's own admissions therefore negate the possibility that Defendant

18

did not pay Plaintiff incentive payments based on his race or age. This claim also fails.

Finally, Plaintiff suggests that Defendant discriminated against him by refusing him the opportunity to work on secured loans as opposed to unsecured loans. However, Plaintiff does not deny that he was hired in May of 2006 for the sole purpose of collecting debt owed on unsecured loans. He also does not contest the fact that he was one of several employees hired to work on unsecured loans. Plaintiff admits that regardless of whether an employee worked on secured or unsecured loans, the employee's goals had to be met in order to be paid incentives. Plaintiff's only proof that he could he could have earned more incentives by working on secured loans is pure conjecture on his part. Because he has not proffered any evidence to this end, this claim will also fail.

Accordingly, this Court finds that Plaintiff has failed to adduce any evidence tending to show that he was subject to discriminatory or disparate treatment practices. Summary judgment will be entered in favor of Defendant as to these claims.

### 4. Hostile Work Environment

"To make out a Title VII hostile work environment claim, an employee must show that '(1) the employee suffered intentional discrimination because of [her] sex, (2) the discrimination was pervasive and regular, (3) the discrimination detrimentally affected the [employee], (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position, and (5) the existence of respondeat superior liability.' " Wood v. University Of Pittsburgh, __ F.3d __, No. 09-4469, 2010 WL 3705997, (3d Cir. September 23, 2010), quoting Andreoli v. Gates, 482 F.3d 641, 643 (3d Cir. 2007). Hostile work environment claims based on racial harassment are reviewed under the same standard as those based on sexual harassment. See Faragher v. Boca Raton, 524 U.S.

775, 786-787 and n. 1 (1998); <u>Meritor Savings Bank, FSB v. Vinson</u>, 477 U.S. 57, 66-67 (1986).

Defendant claims that Plaintiff has attempted to assert that his co-workers sometimes sing, dance, shake maracas, and sleep in the workplace. While Plaintiff considers these actions to be unprofessional, he admitted that none of these actions were aimed at him personally, nor were they directed at him based on his race or age. Thus, these actions fail to meet the criteria set forth in <u>Wood</u> and fall woefully short of discrimination.

However, Plaintiff contends that there are other examples of a hostile work environment. He again points this Court to 2006 when he claims he was not promoted approximately two and half months after being hired by Defendant and when he was allegedly forced to work two jobs. As noted throughout this Opinion, these claims are time-barred.

Plaintiff also claims he was assigned to work a "junk desk" when Caucasians were not, and this affected his income because the accounts to which he was assigned were "harder to collect upon." This Court deems this argument to be the same as the one where Plaintiff alleges that Defendant discriminated against him by refusing him the opportunity to work on secured loans as opposed to unsecured loans. As noted above, Plaintiff does not deny that he was hired in May of 2006 for the sole purpose of collecting debt owed on unsecured loans. He also does not contest the fact that he was one of several employees hired to work on unsecured loans. Plaintiff admits that regardless of whether an employee worked on secured or unsecured loans, the employee's goals had to be met in order to be paid incentives. Plaintiff's only proof that he could he could have earned more incentives by working on secured loans is pure conjecture on his part.

Finally, Plaintiff points to the fact that he was not interviewed for the positions for which he applied at PNC. He argues that given his resume, he should have, at the very least been interviewed

for the positions and claims that Caucasians were interviewed for the position. However, Plaintiff admits that Defendant told him those that were interviewed were more qualified for the positions than Plaintiff. Moreover, Plaintiff admitted that he has no evidence to support a claim that the Caucasians were not qualified for the positions, only his speculation, which is insufficient to support a claim for hostile work environment.

As a result, judgment will be entered in favor of Defendant with respect to Plaintiff's hostile work environment claims.

## IV. CONCLUSION

Because Plaintiff failed to present any evidence that would tend to prove he had a viable claim for either race or age discrimination or retaliation, and because he admitted that he did not have a gender/sex based claim, this Court will grant Defendant's Motion for Summary Judgment and enter judgment against Plaintiff.

In light of the fact that this Court has dismissed the Title VII and ADEA claims over which it had original jurisdiction, this Court declines to exercise supplemental jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(c)(3). Plaintiff's only remaining claims are his PHRA claims, which are grounded in state law. The State Courts are intimately familiar and regularly adjudicate claims of this nature. Accordingly, said state law claims are dismissed pursuant to 28 U.S.C. § 1367(c)(3), albeit without prejudice to Plaintiff's ability to refile these claims in state court. Also, the dismissal of Plaintiff's PHRA should not work to plaintiff's disadvantage. See 28 U.S.C. § 1367(d) (providing for at least a thirty-day tolling of any applicable statute of limitation after the claim is dismissed so as to allow Plaintiff time to refile his state law claim in state court). An appropriate Order follows.

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge


cc:     All Registered ECF Counsel and Parties